UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**

vs.  Case No. 8:17-CR-513-T-27CPT

**REGINALD LEE BLACK**

_____/

## ORDER

**BEFORE THE COURT** are the Report and Recommendation of the Magistrate Judge (Dkt. 54), Defendant's objections (Dkt. 55) and the United States' response to the objections (Dkt. 57).[1] Upon consideration, Defendant's objections are overruled. After a review of the record and the suppression hearing transcripts, the Report and Recommendation is adopted and approved. Defendant's Motion to Suppress (Dkt. 29) is accordingly DENIED.

### Defendant's Objections and Standard of Review

Defendant's objections are limited, with one exception, to the findings and conclusions of the Magistrate Judge with respect to the September 3, 2016 attempted traffic stop and his September 9, 2016 arrest and vehicle search. He does object to the characterization of one item of evidence seized during the August 8, 2016 traffic stop.

A district court may accept, reject, or modify a report and recommendation. 28 U.S.C. § 636(b)(1). Those portions to which objections are made are reviewed *de novo*. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). And when a party files a timely and specific objection to a finding of fact and findings based on testimony, the transcript of the hearing is reviewed. *LoConte v. Dugger*, 847 F.2d

---

[1] The Government's response to Defendant's objections does not address the substance of the objections. Rather, the Government incorporates its "prior filings" and arguments and merely "concurs with the Magistrate Judge's recommendation." The response does not assist the court.

1

745, 750 (11th Cir. 1988), citing *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B 1982) (en banc).[2]

Objections must "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see Leatherwood v. Anna's Linens Co.*, 384 Fed. App'x. 853, 857 (11th Cir. 2010). In the absence of specific objections, there is no requirement that findings be reviewed *de novo*. *Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Nevertheless, the report and recommendation is reviewed for "clear error" even in the absence of objections. *Macort v. Prem, Inc.*, 208 Fed. App'x. 781, 784 (11th Cir. 2006). Legal conclusions are reviewed *de novo*, even in the absence of an objection. *See LeCroy v. McNeil*, 397 Fed. App'x. 554, 556 (11th Cir. 2010) (citing *United States v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982); *Cooper-Houston v. S.. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

## Findings and Conclusions

Defendant moved to suppress evidence seized on (1) July 17, 2016, after he was arrested on an outstanding violation of probation warrant, (2) August 8, 2016, after the vehicle in which he was a passenger was stopped for a traffic violation, (3) September 9, 2016, after he was arrested on a "felony pick-up affidavit" based on offenses committed on September 3, 3016 and (4) September 14, 2016, after he was arrested. (Dkt. 30). The Magistrate Judge, based on the Government's representation that nothing seized after September 9, 2016 would be introduced at trial, focused on the July 17, 2016 arrest, August 8, 2016 traffic stop, and September 9, 2016 arrest. (Dkt. 54, p. 10).

## July 17, 2016 Arrest

With respect to the July 17, 2016 arrest, Defendant concedes there was probable cause for his arrest because of the outstanding VOP warrant. Although he initially challenged whether his

---

[2] The transcripts of the April 10, 2018 and May 30, 2018 suppression hearings have been reviewed. (Dkts. 42, 50).

2

arrest was pretextual and whether his consent to search his cell phone was voluntary, he does not object to the Magistrate Judge's findings and conclusions that the VOP warrant was valid and active and that his pretext argument has been rejected by the Supreme Court. *see United States v. Alston*, 598 Fed. Appx. 730, 733-34 (11th Cir. 2015) ("[B]oth this Court and the Supreme Court have rejected inquiry into an officer's subjective intentions in reviewing the constitutionality of searches and seizures under the Fourth Amendment."), citing *Whren v. United States*, 517 U.S. 806, 811–13, 116 S.Ct. 1769, 1773–74, 135 L.Ed.2d 89 (1996) and quoting *United States v. Lanzon*, 639 F.3d 1293, 1300 (11th Cir.2011) ("A police officer's subjective reasons for a search do not control the legal justification for his actions, as long as objective circumstances justify the search.")

With respect to the July 17, 2016 arrest, the Report and Recommendation has been reviewed for clear error and the legal conclusions have been reviewed *de novo*. There is no clear error. The Magistrate Judge's legal conclusions are consistent with binding precedent in this Circuit and the Supreme Court. Defendant's motion with respect to his July 17, 2016 arrest is accordingly DENIED.

**August 8, 2016 Traffic Stop**

On August 8, 2016, Officers Miller and Gustafson stopped a white Jaguar in which Defendant was a passenger for speeding. During the initial stages of the stop, before Miller completed his computer inquiry of the driver, Gustafson saw a hand held embosser in plain view at Defendant's feet (Dkt. 42, p. 28). According to Miller, this was relevant "because we know based on our experience that those are used to make fraudulent credit cards." (Dkt. 42, p. 28). Miller and Gustafson knew that just three weeks earlier, officers found incriminating evidence on Defendant's iPhone which linked him to fraudulent credit card activity.

In his motion, Defendant challenged only the basis for the stop and subsequent search of the Jaguar, contending the stop was pretextual and without probable cause. (Dkt. 50 at 14-15). While the

3

Magistrate Judge found that Defendant had standing, as a passenger, to challenge the constitutionality of the stop, relying on *Brendin v. California*, 551 U.S. 249, 251 (2007), he correctly found that the challenge to the stop was without merit, as there was probable cause to stop the Jaguar because of a traffic violation. And he correctly found that Defendant did not have standing to challenge the search of the Jaguar, since he had no expectation of privacy in it.

Defendant admitted that he did not own the Jaguar. (Dkt. 42 at 193). And there was no evidence that he had a possessory interest in it or exercised dominion and control over it to the exclusion of others. Defendant maintained that the Jaguar belonged to Ms. Dawes and she loaned it to people. Walden testified similarly. (Dkt.42, p. 225; 234). Based on this evidence, the Magistrate Judge found that Defendant had not met his burden of establishing that he had a legitimate expectation of privacy in the Jaguar (Dkt. 54, p. 17), and therefore did not have standing to challenge its search. This finding is supported by the evidence and therefore not clearly erroneous. Alternatively, the Magistrate Judge found that the officers had reasonable suspicion of illegal activity other than for the traffic stop and therefore had probable cause to search the Jaguar and its compartments. That alternative finding is likewise supported by the evidence and legal precedent.

Defendant does not object to the Magistrate Judge's conclusion that he lacked standing to challenge the search, and with good reason. The law of this Circuit demonstrating the correctness of the Magistrate Judge's conclusion has been succinctly summarized:

> A party seeking to challenge a search on Fourth Amendment grounds must establish that he has a legitimate expectation of privacy in the searched area. *Rakas v. Illinois*, 439 U.S. 128, 143–44, 99 S.Ct. 421, 430–31, 58 L.Ed.2d 387 (1978). "A person has a legitimate expectation of privacy if (1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable." *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir.), *cert. denied*, 555 U.S. 1014, 129 S.Ct. 569, 172 L.Ed.2d 433 (2008). "[A] passenger[ ] in a private car, ... who has no possessory interest in the automobile, does not have a legitimate expectation of privacy in the interior of the automobile because he does not have the right to exclude others from the car." *United States v. Lee*, 586 F.3d 859, 864 (11th Cir.2009), *cert.*

4

*denied*, 559 U.S. 1100, 130 S.Ct. 2392, 176 L.Ed.2d 782 (2010) (quotation omitted). *United States v. Ubaldo-Viezca*, 398 F. App'x 573, 579 (11th Cir. 2010).³

Defendant objects to the Magistrate Judge's alternative finding that even if he had a reasonable expectation of privacy in the Jaguar, there was probable cause for its search. Essentially, he argues that the existence of the embosser "is not illegal in itself and cannot provide a basis for the search." I disagree and find that the Magistrate Judge's alternative finding of probable cause was not erroneous. The presence of the embosser, considered in the context of the credit card fraud investigation, was a specific and articulable fact which raised a rationale inference of criminal activity.

When Officers Miller and Gustafson saw the Jaguar, it was traveling at a high rate of speed, weaving in and out of traffic. On Riverhills Drive, it was traveling 48 mph in a 35 mph zone, prompting the traffic stop (Dkt. 42, p. 25-26; 86). As the Magistrate correctly found, the stop was justified under binding Supreme Court and Circuit precedent. *Whren*, 517 U.S. at 810; *Terrell v. Smith*, 668 F.3d 1244, 1251-52 (11th Cir. 2012). Specifically, the traffic violation justified the stop. *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (traffic stop is constitutional if based either on probable cause to believe a traffic violation has occurred or justified by reasonable suspicion). And the Magistrate Judge was correct that the officer's subjective intentions are irrelevant, so long as reasonable suspicion objectively existed to justify the stop. *Id.* Defendant's pretext argument was therefore correctly rejected.

While Officer Miller was running the driver's name in his computer, Officer Gustafson engaged Defendant and the driver in conversation which, according to Miller, resulted in their

---

³ The panel in *Ubaldo-Viezca* noted that "*Brendlin* addressed a passenger's standing to challenge the constitutionality of the initial traffic stop, rather than the search of the vehicle in which he is riding." citing *Brendlin*, 551 U.S. at 254, 256-58, 127 S.Ct. at 2405-07. *Id.* at 579.

5

consent to a search of the vehicle. (Id. at 27-28). However, the Magistrate Judge found that the evidence did not support the Government's contention that they consented to the search. And the Magistrate Judge rejected the Government's contention that the odor of marijuana on Defendant justified the search of the Jaguar.[4] Neither the Defendant or the Government take issue with these findings. Notwithstanding, there was probable cause to search the vehicle for evidence of credit card fraud.

In the absence of consent, the reasonableness of the decision to detain and search the Jaguar is governed by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990). A traffic stop must be of limited duration, ordinarily no longer than necessary to process the traffic violation. *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003). Here, the duration of the stop was not unreasonable. (Dkt. 50 at p. 20). According to Miller, the stop lasted "[m]aybe 25 minutes, 30 minutes," and according to Walden, 10 minutes. (Id. at p. 31; 233).

It was reasonable for Miller to run the driver's name, particularly considering that she did not have a driver's license and produced no paperwork concerning the vehicle. (Dkt. 42, p. 65). *Rodriquez v. United States*, 135 S.Ct. 1609, 1612 (2015); *Boyce*, 351 F.3d at 1106 (officers conducting a traffic stop may "prolong the detention to investigate the driver's license and the vehicle registration, and may do so by requesting a computer check."). Moreover, as here, once a stop is lawfully made, the officers have a "duty to investigate suspicious circumstances" that come to their

---

[4] Miller testified that they detected a "slight odor of [burnt] marijuana coming from [Defendant's] person," which justified a search of the occupants and the vehicle. He is correct. The smell of marijuana may provide reasonable suspicion for further investigation of possible criminal conduct, including the "brief detention of a vehicle and its occupants and a limited pat-down." *United States v. White*, 593 F.3d 1199, 1203 (11th Cir. 2010), quoting *United States v. Williams*, 876 F.2d 1521, 1524 (11th Cir. 1989). The Magistrate Judge, however, discounted this justification for the search, finding that "the greater weight of the evidence does not support the government's contention that there was probable cause to search the Jaguar for marijuana." (Dkt. 54, p. 23).

attention. *See United States v. Cantu*, 227 Fed. Appx 783, 785 (11th Cir. 1991). And the detention can be lengthened if the officer "has reasonable suspicion of illegal activity other than the traffic violation, or if the detention has become a consensual encounter." *Id.*, citing *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999). Here, they did.

"Reasonable suspicion" is determined by the totality of the circumstances, *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989), and from the collective knowledge of the officers involved in the stop. *Tapia*, 912 F.2d at 1370. The officers must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21.

Considering the collective knowledge of Miller and Gustafson and the ongoing fraudulent credit card investigation, the presence of the embosser provided reasonable suspicion of illegal activity other than the traffic violation.[5] *See United States v. Bautista-Villanueva*, 524 Fed. App'x 476, 478 (11th Cir. 2013) ("Officers are expected to use their experience and specialized training to draw inferences from the cumulative information available to them, inferences that may evade untrained observers."). They were therefore entitled to prolong the detention to investigate that activity and search the Jaguar for evidence of credit card fraud.

As the Magistrate Judge correctly concluded, the totality of the circumstances demonstrated a "'fair probability that contraband or evidence' related to credit card fraud would be found in the Jaguar," and the officers were therefore entitled to search it. And the automobile exception justified the warrantless search, considering the vehicle's mobility and the existence of probable cause to believe the vehicle may contain evidence of a crime. *United States v. Tamari*, 454 F.3d 1259, 1261

---

[5] According to Miller: "When you look for things in credit card fraud you look for things such as pieces of paper with names, date of births, social security numbers, addresses, credit card information, you look for laptops, you look for ledgers, you look for different receipts that credit cards could have been used at, you look for *embossers* which are things you make fraudulent credit cards."(Dkt. 42, p. 16-17) (emphasis added).

7

(11th Cir. 02006).⁶ This included the search of the glove box. *United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

Defendant objects to the characterization of a DYMO label marker as a "credit card embosser." This objection is overruled. Officer Miller described "embossers" as "things you make fraudulent credit cards [with]." (Dkt. 42, p. 17). Although he acknowledged that the embosser, which he described as a "label marker," could be found at Office Depot or Staples (Id. at p. 70), based on his experience, he knew that "those are used to make fraudulent credit cards." (Dkt. 42, p. 28). I find therefore that the Magistrate Judge correctly described the embosser.

Defendant's contention that the "DYMO label marker is not illegal in itself and cannot provide a basis for a search" is without merit. That an embosser or label marker is not illegal to possess is not determinative. What is determinative is whether the embosser is evidence of a crime. Probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' (citation omitted) that certain items may be contraband or stolen property *or useful as evidence of a crime* . . ." *Texas v. Brown*, 460 U.S. 730, 742, 103 S. Ct. 1535, 1543, 75 L. Ed. 2d 502 (1983) (emphasis added). Here, as discussed, Miller and Gustafson had reason to believe that the embosser was "useful as evidence of a crime."

Defendant's objections to the Magistrate Judge's finding and conclusions with respect to the August 8, 2016 stop and search are overruled.

**September 3, 2016 Traffic Stop and September 9, 2016 arrest**

Defendant contends his warrantless arrest on September 9, 2016 based on the pick-up request

---

⁶ During the search, Miller found seven fraudulent credit cards in the glove box with Defendant's identification card and with his name on them (Id. at p. 28-29). Post *Miranda*, Defendant admitted the cards were his.

8

was without probable cause. He also objects to the finding that he was identified as the driver of the Jaguar on September 3, 2016. I find there was probable cause for his arrest for the felony offense of fleeing to elude and that Officer Ford could rely on Officer Maceo's identification of him as the driver of the Jaguar on September 3, 2016. His objections are therefore overruled.

In Florida, and consistent with the Constitution, an arrest can be made when an officer "reasonably believes that a felony had been or is being committed and that the person to be arrested has committed or is committing it." Fla. Stat. 901.15(2), (3); *United States v. Goddard*, 312 F.3d 1360, 1362–63 (11th Cir. 2002), quoting *Florida v. White*, 526 U.S. 559, 565, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999) ("[T]he Fourth Amendment permits warrantless arrests in public places when an officer has probable cause to believe that a felony has occurred.").[7] A warrant is not required, and exigent circumstances need not justify the arrest. *United States v. Watson*, 423 U.S. 411, 423 (1976).

Officer Ford was familiar with Defendant from an encounter he and Officer Maceo had with him in December 2015, when he was seen near an Infinity when his driver's license was suspended. Three days later, Ford saw him driving the Infinity and conducted a traffic stop. He arrested him for violation of probation and driving on a suspended license. In 2016, Ford had another encounter with Defendant, when he fled on foot from a vehicle.

On September 3, 2016, Ford received a radio communication from an aviation unit that a white Jaguar had run a stop sign. He recognized the description of the vehicle as the one Defendant had "fled from . . . on foot" two months before. (Id. at 98). He pursued the Jaguar and ran its tag, confirming that it was the same Jaguar. (Id. at 99; 113-114).The Jaguar slowed initially, but

---

[7] With respect to misdemeanors, "[a]n officer is authorized to make a warrantless arrest for a misdemeanor only when it is committed in the officer's presence." *Weaver v. State*, 233 So. 3d 501, 503 (Fla. 2d DCA 2017), quoting *Baymon v. State*, 933 So.2d 1269, 1270 (Fla. 2d DCA 2006) (citing § 901.15(1), Fla. Stat. (2004).

accelerated away. (Id. at p. 99-100). Ford notified the aviation unit and "paralleled" the vehicle until advised by the aviation unit that the driver and passenger were fleeing after abandoning the vehicle in a ditch. The passenger was located, denied driving, but would not identify the driver. The driver was not located. (Id. at 100-101). However, Ford received a radio call from Officer Maceo advising that Defendant was the driver of the Jaguar when Ford attempted to pull it over. (Id. at 101-102). As a result, Ford completed a criminal arrest affidavit against Defendant for fleeing to elude, a felony under Florida law,[8] and driving with a suspended license. (Id. at 102-103). He placed a "probable cause pickup" with the Tampa Police Department's communication center. (Id.).

On September 9, 2016, relying on the pickup request, Officers Lambeth and Simpkins arrested Defendant, who they saw in a parking lot reaching into the driver's side of a black Infinity with its engine running. (Id. at 127-128). In plain view, they saw several MasterCards and his identification in the driver's door pocket of the Infinity. (Id. at 127-128). They knew he was the subject of a credit card fraud investigation and had previously been stopped with counterfeit cards in his possession. The Infinity was impounded and the credit cards were seized as evidence.

The Magistrate Judge credited Officer Ford's testimony that the Jaguar Defendant was seen with on July 17 and August 8, 2016 was the same vehicle which sped away from him on September 3, 2016. And, as the Magistrate Judge found, "[w]hile Ford could not discern who was in the car at the time, he knew that the vehicle belonged to Black's then-girlfriend, Jenae Dawes, and that Black had driven the car in July 2016 before fleeing from it on foot." (Dkt. 54 at 27-28). That summary of

---

[8] See Section 316.1935 (2), Fla. Stat. "Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated commits a felony of the third degree . . ."

10

Ford's testimony is accurate and supported by the evidence. And the Magistrate Judge accurately described Officer Maceo's ability to identify Defendant as the driver of the Jaguar. Indeed, Ford had a substantial basis for crediting Maceo's identification, since Maceo had seen Defendant driving the vehicle when Ford attempted to stop it. Maceo's communication was reasonably trustworthy information on which Ford could rely.

To the extent Defendant challenges Ford's reliance on Maceo's identification of him as the driver, his objection is overruled. As he acknowledges, nothing prevents an officer from relying on hearsay in determining whether probable cause exists. (Dkt. 55 at p.8) ("Admittedly, the Supreme Court has suggested that other law enforcement officers can rely on certain information from other law enforcement officers but has not formally adopted a clear articulation.") (citing *Whitely v. Warden*, 401U.S. 560 (1971)). Indeed, an officer may rely on the collective knowledge of law enforcement officers, "so long as they maintained at least a minimal level of communication during the investigation." *See United States v. Willix*, 2018 WL 705643, at *3 (11th Cir. 2018), quoting *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985); *Terrell v. Smith*, 668 F. 3d at 1252; *Dewberry v. State*, 905 So. 2d 963, 967 (Fla. 5th DCA 2005) ("The fellow officer rule, sometimes referred to as the collective knowledge doctrine, allows the collective knowledge of police investigating a crime to be imputed to each member of the investigation.").

As for Defendant's quarrel with the Tampa Police Department's use of a pickup request, Lambeth could rely on Ford's determination of probable cause under the "fellow officer rule." "The 'fellow officer' rule, first adopted in *Whiteley v. Warden*,[9] (citation omitted), allows an arresting

---

[9] *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568, 91 S. Ct. 1031, 1037, 28 L. Ed. 2d 306 (1971) ("Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.")

11

officer to rely upon the strength of a directive or bulletin on a suspect and assume probable cause exists to arrest the particular person identified in the bulletin; thus, the arresting officer is not required to have sufficient firsthand knowledge to constitute probable cause." *Smith v. State*, 719 So. 2d 1018, 1021–22 (Fla. 3d DCA 1998); *Voorhees v. State*, 699 So. 2d 602, 609 (Fla.1997) ("The fellow officer rule allows an arresting officer to assume probable cause to arrest a suspect from information supplied by other officers."); *Johnson v. State*, 660 So. 2d 648, 654 (Fla. 1995) (an officer may rely on hearsay from other officers to establish probable cause). And Florida's fellow officer rule applies to searches as well as arrests. *State v. Peterson*, 739 So. 2d 561, 567 (Fla.1999) ("We agree with the reasoning of these courts and find that the 'fellow officer' rule applies to searches as well as arrests."), *cert. denied*, 531 U.S. 831, 121 S.Ct. 85, 148 L.Ed.2d 46 (2000).[10]

Finally, Defendant's implicit contention that his arrest was "pre-planned" and therefore violated the Fourth Amendment is without merit, considering the existence of probable cause for the arrest. Where, as here, historical facts viewed from the perspective of an objectively reasonable officer (Officer Ford) give rise to probable cause to believe that a felony has been committed (fleeing to elude), a warrantless arrest is constitutionally permitted. *D.C. v. Wesby*, 138 S. Ct. 577, 586, 199 L. Ed. 2d 453 (2018). ("To determine whether an officer had probable cause for an arrest, 'we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause.'" quoting *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (citation omitted).

---

[10] While Defendant argues that "the issue is not staleness," the Magistrate Judge correctly found that the six days which elapsed between Ford's submission of the pick-up request and Defendant's arrest did not dissipate probable cause for the arrest. As the Magistrate Judge correctly noted, the only circumstance in which probable cause becomes stale is when it is discovered that the information on which it was based has since been discredited. *See Russell v. Devereaux*, 389 Fed. App'x. 557, 560 (7th Cir. 2010). That was not the case here. Defendant's characterization of the officers' actions as "utter contempt for using an arrest warrant either through sloth, ignorance, or some other nefarious purpose" is unnecessary and unprofessional rhetoric, having no persuasive weight.

A warrant was not constitutionally required.

With respect to the seizure and search of the Infinity on September 9, 2016, Defendant does not object to the Magistrate Judge's finding that he did not have a legitimate expectation of privacy in the Infinity or his alternative finding that the officers had probable cause to search it. Lambeth saw what he suspected were fraudulent credit cards in plain view in the Infinity, and considering the ongoing credit card fraud investigation, had probable cause to impound and search it. *Michigan v. Thomas*, 458 U.S. 259, 261 (1982); *United States v. Garcia*, 433 Fed. Appx. 741, 744 (11th Cir. 2011).[11] Those findings are correct and supported by the testimony.

**Conclusion**

After a *de novo* review of the findings to which objection is made, a *de novo* review of the Magistrate Judge's legal conclusions, and finding no clear error otherwise, the Report and Recommendation is adopted and approved.

**DONE AND ORDERED** this 22nd day of August, 2018.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[11] Under the automobile exception, officers may conduct a warrantless search of a vehicle if it is operational and there is probable cause to believe it contains contraband or evidence of a crime. *United States v. Tamari*, 454 F.3d 1259, 1261 (11th Cir. 2006). And unlike a search incident to arrest, the automobile exception "allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader." *See Willix*, 723 F. App'x at 911, citing *Arizona v. Gant*, 556 U.S. 332, 347, 129 S.Ct. 1710, 1721, 173 L.Ed.2d 485 (2009).